# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals
Fifth Circuit**

**F I L E D**

January 14, 2011

Lyle W. Cayce
Clerk

No. 10-60348
Summary Calendar

TURNER INDUSTRIES GROUP, L.L.P.,

Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
HILDA L. SOLIS, SECRETARY, DEPARTMENT OF LABOR,

Respondents

Petition for Review of an Order of the
Occupational Safety and Health Review Commission
OSHRC No. 08-0448

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Turner Industries Group, L.L.P., appeals a final order of the Occupational Safety and Health Review Commission ("the Commission"), which adopted the administrative law judge's ("ALJ") findings and conclusions, and affirmed the ALJ's citation of Turner for a serious violation of Occupational Safety and Health Standards, specifically, 29 C.F.R. § 1910.212(a)(3)(ii), for failing to guard

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60348

the point of operation of a pipe-cutting machine and fined the company $1,000 for the violation.   We DENY the petition for review and AFFIRM the Commission's order.

The Commission cited Turner for violating 29 C.F.R. § 1910.212(a)(3)(ii), which provides:

> The point of operation of machines whose operation exposes an employee to injury, shall be guarded.  The guarding device shall be in conformity with any appropriate standards therefor, or, in the absence of applicable specific standards, shall be so designed and constructed as to prevent the operator from having any part of his body in the danger zone during the operating cycle.

The citation followed an employee injury at Turner's factory involving a pipe-cutting machine that Turner had installed approximately two weeks before the accident.  The machine is operated by mounting large sections of pipe over protruding shafts.  At the two accessible points of operation on the machine are circular spinning bevels, which cut the pipe at an angle.  Operators of the machine access the points of operation in order to take measurements and make adjustments.  The point of operation closest to the machine's control panel has a guard, which must be removed in order to access the machine.  The second point of operation is on the opposite side of the machine from the control panel and is not equipped with a guard.  This point of operation can be accessed while the bevels are spinning because the bevels can remain energized even without an operator present at the control panel.  Furthermore, there is no automatic sensor to disable the bevels if this second point of operation is accessed while the machine is operating.  That is, even if only one person is operating the machine, it is possible for that operator to engage the bevels from the control panel and walk around the machine and access the second, unguarded point of operation while the bevels are still engaged.

No. 10-60348

At the time the employee was injured, and in the two weeks leading up to the incident, Turner's employees were being trained on the new pipe-cutting machine by a representative of the machine's manufacturer, at Turner's request. Throughout the training, two of Turner's employees accessed the machine's two points of operation while the trainer manipulated the machine's control panel. At the time of the incident, the employee who was injured was working at the unguarded point of operation on the opposite side of the machine from the control panel. The employee was taking measurements when the trainer unexpectedly started the machine. The machine's spinning bevels caused severe injuries to the employee's hand.

The following day, the Occupational Health and Safety Administration assigned a Compliance Safety and Health Officer to investigate the incident. The officer reviewed Turner's written operational procedures for the pipe-cutting machine, spoke with Turner employees, and visited Turner's factory. He recommended a citation of Turner for a serious violation of 29 C.F.R. § 1910.212(a)(3)(ii). At the hearing Turner requested to contest the citation, the ALJ heard live testimony from the Turner supervisor who had directed the Turner employees to be trained on the pipe-cutting machine, and from the Compliance Safety and Health Officer who investigated the incident. The ALJ also received into evidence documentary exhibits, including Turner's written Job Safety Analysis ("JSA") for the machine—both the original JSA and the revised JSA, which was modified following the employee's injury. The ALJ found that Turner had violated 29 C.F.R. § 1910.212(a)(3)(ii) by failing to provide a guarding device for both operational access points on the pipe-cutting machine. The ALJ however, reduced the Compliance Safety and Health Officer's proposed penalty from $2,625 to $1,000. The Commission adopted the ALJ's findings of fact and conclusions of law on appeal, and affirmed the citation and penalty.

No. 10-60348

"On appeal, this Court only reviews the Commission's findings of fact to ensure they are supported by substantial evidence in the record considered as a whole." *Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 362 (5th Cir. 2005) (internal quotation marks omitted); *Fred Wilson Drilling Co., Inc. v. Marshall*, 624 F.2d 38, 40 (5th Cir. 1980); *see also* 29 U.S.C. § 660(a). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Chao*, 401 F.3d at 362 (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619-20 (1966) (citation omitted)); *see also Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) ("[Substantial evidence] does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))); *Fields Excavating, Inc. v. Sec'y of Labor*, 383 F.3d 419, 420 (6th Cir. 2004) ("The substantial evidence test protects both the factual findings and the inferences derived from them, and if the findings and inferences are reasonable on the record, they must be affirmed even if this court could justifiably reach a different result de novo." (internal quotations omitted)).

The Commission's finding that Turner violated 29 C.F.R. § 1910.212(a)(3)(ii) by failing to provide a guarding device on the pipe-cutting machine is supported by substantial evidence. The Turner supervisor testified that Turner recognized the possible hazard presented by the operation points to the pipe-cutting machine, particularly the unguarded operation point, which was specifically reflected in Turner's original JSA and revised JSA. He also testified that protective guards that would prevent the machine from operating while the points of operation were being accessed would prevent injuries, such as the one that occurred, and that such guards could feasibly be added to the machine. The supervisor further testified that he personally observed Turner employees accessing the machine from the unguarded operation point, and that throughout

No. 10-60348

the training, three people were operating the machine at the same time—a Turner employee at each of the operation access points and the trainer at the control panel. The supervisor contended, however, that having more than one person operate the machine was unique to the training and that during normal working conditions, the machine would be operated by only one person. This, according to the supervisor, would substantially lessen or negate the possibility that the machine's operator would access the operation point opposite the control panel while the machine was running. However, the ALJ found that Turner's JSAs, both the original and revised, indicated that under normal working conditions, Turner expected two people to be operating the machine together. Therefore, the ALJ found that Turner's own written operational policy for the machine anticipated conditions similar to those in the instant case, which resulted in the employee's injury and may involve access to an unguarded operation point of the machine.

Turner's argument that the Commission has failed to establish that a hazard existed within the scope of 29 C.F.R. § 1910.212(a)(3)(ii) is misplaced. Turner argues that it was unforeseeable that when the machine is operated by one person—as, according to Turner, it would be during normal operation—the operator would access the machine at the unguarded operational point on the opposite side from the control panel while the machine was running. Turner argues that decisions by the Commission, which it cites, establish a rule that "in order for the Commission to find employee exposure to a hazard, it must determine that it is reasonably predictable, either by operational necessity or otherwise, and that employees have been, are, or will be in the zone of danger."

Even assuming arguendo that Turner is correct about the reasonably-predictable-hazard rule, this argument fails. The ALJ specifically considered and rejected this argument:

5

No. 10-60348

[Turner] argues that once training was completed, only one employee would operate the machine at a time and there was no reasonable expectation that the single operator would walk around to the unguarded portion of the machine while it was in operation. However, [Turner] ignores the focus of the citation in this case. The Secretary alleges that for two weeks up to and including the accident, [Turner]'s employees were being trained as a group, with at least two employees simultaneously working on the machine, resulting in daily employee exposure to the unguarded point of operation. Second, in contradiction of [Turner]'s argument, its written procedures required two employees at a time to operate the pipe-cutting machine. Even if operating the machine alone, employees were required to periodically access the unguarded side to take measurements and make adjustments. [Turner] has cited no legal authority to support its argument that a different standard of care exists during training sessions as opposed to regular business operations. I do not accept such argument in light of the purpose of the Act. I find that even if the accident had not occurred, it was still reasonably predictable that [Turner]' s employees could come within the zone of danger of the unguarded side of the machine.

*Turner Indus. Group, LLP*, 23 BNA OSHC 1049 (No. 08-0448, 2009) (ALJ), *aff'd* 23 BNA OSHC 1047 (2010). This finding is supported by substantial evidence in the record, which makes abundantly clear that Turner employees were in fact instructed to access the unguarded operational point of the machine, and that it is foreseeable that Turner employees will be in the zone of danger even under normal working conditions. Turner's own revised JSA requires two people to be operating the machine together, which may predictably lead to one of the employees accessing the unguarded operational point while the other employee energizes the machine from the control panel. This in fact, is the exact situation that led to the employee's injury in the instant case. Additionally, even if Turner is correct that during normal working conditions, only one employee will operate the machine, that employee may still access the unguarded operation point while the machine is engaged because the machine is designed so that the bevels can

be engaged from the control panel and continue to operate even if the operator goes around to the other side of the machine and accesses the unguarded operation point.

Therefore, Turner has failed to demonstrate that the Commission's decision was not supported by substantial evidence. Accordingly, its petition for review is DENIED and the order of the Commission is AFFIRMED.